Timothy Zerillo · def.
Leanne Sutton · State

Attest: *[handwritten signature]*
Clerk of Courts

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CRIMINAL ACTION
Docket No. CR-07-1800

STATE OF MAINE,

v.                                                          ORDER

ERNEST POLITE,

DONALD L. GARBRECHT
LAW LIBRARY

JUN 19 2008

Defendant.

Before the court is defendant's motion to suppress both the out of court identification of defendant by Detective Scott Durst and any in court identification by Detective Durst. An evidentiary hearing was held on the motion on May 2, 2008.

Facts

On February 21, 2007, Detective Scott Durst of the MDEA, working undercover, made an arrangement to purchase crack cocaine. Durst first telephoned a person known to him as "Migs," who gave him a second telephone number to call. When he called the second number, a male who identified himself as "Bigs" arranged to meet Durst at 69 High Street at approximately 7:45 p.m.

Durst went to 69 High Street at the appointed hour, encountered an African American female at the back door, and was asked if he was there to see "B." Durst responded affirmatively and said he was expected. At that point, looking through the window of the rear door, he observed an African American male coming through 69 High Street. The African American male opened the door, let Detective Durst in, and removed some bags containing crack cocaine from his mouth. Durst exchanged $220 for the bags and left.

During the transaction, which lasted approximately one minute, Durst was 2 to 3 feet from the African American male, and the lighting was good. Durst also had had an opportunity to observe the male through the window of the back door before he was invited in. Durst is a very experienced police officer who was aware that it was likely he would have to identify the male at a later time, and he was paying considerable attention to the man's appearance.[1]

After Durst left and returned to his office, he asked another MDEA detective, Jeffrey Calloway, to see if the identity of "Bigs" could be ascertained. Durst described "Bigs" as a heavyset African American male who had been wearing a puffy winter coat.

Durst had also received information that "Bigs" was staying at the Holiday Inn on Spring Street, so Calloway first went to that location and passed on a general description to the security staff there. Calloway subsequently was advised by hotel staff that the Holiday Inn had a guest named Ernest Polite who met that general description. Calloway thereafter checked with the FBI, who said they were aware of an Ernest Polite from Massachusetts. Calloway then determined that Ernest Polite had a Massachusetts driver's license and arranged for a color picture of Polite's driver's license photo to be emailed to him (State's Ex. 2).

When that photo arrived, Calloway showed it to Durst and asked Durst if he knew who it was. Durst identified the photo as "Bigs." Although Calloway did not expressly suggest the photo depicted "Bigs" before showing it to Durst, Durst understood that it was likely he was being shown a photo of someone who Calloway

---

[1] When asked what the male looked like, Durst indicated the defendant in court and stated that he looked like he looked "right now." Questioned about specific details, Durst stated that at the May 2, 2008 hearing defendant had a neatly trimmed beard along his jaw line, while the male he observed in February 2007 did not have such a beard although he did have a 5 o'clock shadow or slight stubble.

2

thought might be "Bigs." All of this occurred on February 22, 2007, one day after Durst had purchased drugs from "Bigs" at 69 High Street.

No arrest was made at that time. Approximately 5-6 weeks later, on April 3, 2007, Durst was again working undercover and arranged another meeting to purchase drugs. On this occasion he was instructed to walk along Frederick Street and there encountered an African American male from whom he purchased crack cocaine. On this occasion the lighting was worse but there were street lights, and although the exchange of drugs took place while Durst was kneeling next to a parked car, he was very close to the African American male and was certain it was the same man from whom he had purchased crack cocaine on February 21 and the same person who was seated at the defendant's table in the courtroom at the May 2, 2008 suppression hearing.

A month later, on May 2, 2007, at 63 Frederick Street, Durst made yet another undercover purchase of crack cocaine from a person he identified as the same African American male. On this occasion Durst and the male were in a lighted stairway area and Durst was 1-2 feet from the male in question. Once again, the transaction lasted perhaps a minute and Durst was 100% confident the male was the same person he had purchased crack cocaine from on February 21 and April 3.

Durst acknowledged that he had initially described the male in question as in his 20s, weighing approximately 260 pounds,[2] and clean-shaven. Durst was surprised when he found that Polite was 35 because Durst did not think he looked that old. Durst's weight description was an approximation and he acknowledged he could be off. When it was suggested on cross-examination, however, that defendant weighed 350 pounds, Durst said he would be surprised if defendant had weighted that much back then.

---

[2] On another occasion Durst apparently estimated the weight as approximately 240.

Given that it is difficult to estimate age and weight, the court does not find that any inaccuracy in Durst's description as to age and weight demonstrated any material discrepancy that would affect the reliability of his identification.[3] With respect to facial hair, Durst testified without contradiction that the male from whom Durst purchased crack cocaine in February, April and May 2007 did not have a beard although he did have a five o'clock shadow similar to the one on Polite's driver's license photo (State's Ex. 2). The court found this testimony to be credible. To the extent that the choice was to describe defendant as either "bearded" or "clean shaven," therefore, the description as "clean shaven" was more accurate.[4] There is no evidence in the record that defendant had a beard in February, April or May 2007.

Conclusions of Law

The first issue – on which the defendant has the burden of proof by a preponderance, see State v True, 464 A.2d 946, 950 (Me. 1983) – is whether the identification procedure used by the State was unnecessarily suggestive. On this issue, when only a single photograph was shown, the court concludes that defendant has met his burden. Because the driver's license photo was shown to a law enforcement officer rather than a civilian, perhaps the greatest potential danger of a suggestive identification was not present in this case. A civilian who is being shown a single picture may assume that the picture is being shown because the police have

---

[3] No evidence was offered that defendant weighed 350 pounds in 2007, and he did not appear to be that heavy at the suppression hearing. On this record, no discrepancy as to weight has been shown.

[4] "Clean shaven" better describes the person in State's Ex. 2 than bearded. From its own observations, the court would note that although defendant had a jaw line beard at the suppression hearing on May 2, 2008, the beard was sufficiently low on his jaw line that it was only noticeable in profile. From the front, defendant did not appear to have a beard on May 2, 2008.

4

independent knowledge identifying the perpetrator and may be inclined to rely upon the officer's supposed expertise. *See State v. True*, 464 A.2d at 950. A law enforcement officer will not necessarily be so inclined to assume the correctness of a suggestive identification.

However, law enforcement officers are not immune to the power of suggestion, and the cases have correctly applied the same rules of law to identifications by policemen. *See, e.g., Manson v. Brathwaite*, 432 U.S. 98, 101-02 (1977).

Given that the defendant has met his burden in this case, the remaining question – on which the State has the burden of proof by clear and convincing evidence, *State v. True*, 464 A.2d at 950 – is whether under the totality of the circumstances the identification was reliable even though suggestive. On this issue the court finds that the State has met its burden.

Specifically, the caselaw suggests that, in addressing reliability, the court should consider various factors including the opportunity of the witness to observe the defendant, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the level of certainty demonstrated by the witness, and the length of time between the original observation and the identification. *State v. True*, 464 A.2d at 950. *See Manson v. Brathwaite*, 432 U.S. at 114-15. In this case Durst saw the individual he identified as the defendant on three separate occasions, once before he was shown the photograph and twice after. The subsequent encounters gave Durst the opportunity to validate his original identification. On two of the occasions when Durst

5

observed the male the lighting was good, and on all of those occasions Durst had reason to (and did) pay close attention to defendant's features.[5]

In addition, Durst credibly testified that he had a very high level of certainty both that the person in the license photo was "Bigs" and that the same person was present in the courtroom at the suppression hearing. Finally, he saw the driver's license photo only one day after the drug transaction.

The only factor that does not strongly support the reliability of the identification involves the physical descriptions given by Durst. However, for the reasons previously stated, the court does not find that the discrepancies with respect to descriptions are significant enough to outweigh the factors in favor of reliability. Specifically, the evidence does not demonstrate any discrepancies as to weight and facial hair as of the time of the identification, and the admitted inaccuracy as to age is not the kind of discrepancy that precludes the court from finding that it is highly probable that despite the suggestive photo identification, Durst's overall identification was still reliable.

Defendant's motion to suppress Durst's out of court and in court identifications is denied.

DATED:    May _8_, 2008

_____
Thomas D. Warren
Justice, Superior Court

---

[5]  Moreover, because Durst was a very experienced drug officer, he was not subject to the same stress as someone thrown into an unexpected situation. *See Manson v. Braithwaite*, 432 U.S. at 112.